## AGENT OF STATE PRISON *v.* LATHROP.

The statute, Sess. L. 1842, p. 180, requires the agent of the state prison to give notice, in a newspaper, for sealed proposals for letting the convicts. The agent of the prison, without giving such notice, hired convicts to defendant for a term of years. The contract was held to be void—the mode of letting prescribed by the statute being a limitation on the power itself, and not merely directory to the agent of the prison.

Under the general issue in covenant, the defendant may show the deed is not his by proving a lack of power in the agent who executed it on his behalf.

ERROR to Jackson Circuit Court. Henry B. Lathrop brought an action of covenant, in the circuit court, against the agent of the state prison, for a breach of articles of agreement, by which the agent of the the prison had let to him the services of a number of convicts for a term

of years, and recovered a judgment for $5,735 63. The convicts were let by the agent of the prison, under an act entitled " An act authorizing the agent of the state prison to lease, for a term of years, the labor of convicts in the state prison." Sess. L. 1842, p. 130. The first two sections of the act are as follows:

" Sec. 1. That it shall be the duty of the agent of the state prison, and he is hereby authorized to employ the convicts confined in said prison at mechanics' labor, or so many of them as, in the opinion of the agent, will best promote the interest of the state, for a term of years, not exceeding five years.

" Sec. 2. That it shall be the duty of the agent to give at least twenty days' notice, in some newspaper printed in the village of Jackson, or city of Detroit, for sealed proposals for letting the convicts for said labor of all or any of those branches now carried on or may hereafter be carried on in said prison: that the notice shall specify the branch or branches, and the length of time for which each branch will be let."

On the trial, a number of exceptions were taken by defendant to the ruling of the court, and among others the following: The execution of the agreement having been admitted by defendant, the plaintiff offered it in evidence. Defendant objected to its reception as evidence, until the plaintiff should show the agent of the prison had given notice of the letting of the convicts, as required by the second section of the aforesaid act. The objection was overruled by the court, and defendant excepted. After plaintiff had closed his testimony, defendant called the clerk of the prison, who was sworn, and testified that he had been clerk of the prison for seven years last past. Defendant then offered to prove by the witness, that no notice of the letting of the convicts had been given by the agent of the prison, previous to the making of the contract with the plaintiff, and that no sealed proposals were made by plaintiff. This evidence was objected to by plaintiff and the objection sustained by the court, and defendant excepted. Other exceptions were taken in the course of the trial, but it is unnecessary to state them.

*Lothrop*, attorney general, for the plaintiff, in error.

*J. M. Howard*, for the defendant, in error.

*By the court,* WING, J.   The counsel for the defendant in error insists that the second section of the act was simply directory, and whether the agent did or did not comply with its provisions, the rights of the defendant were in no wise affected thereby.

The first section of the act does not in terms authorize the agent of the prison to let the services of the prisoners.   No one, in reading this section, would be likely to maintain that anything was intended by it, further than the employment of the prisoners by the agent, in the prison.   It is only by reading the second section that we are informed that the convicts are to be let   Whatever may have been the general powers of the agent conferred by other laws, in reference to the objects indicated by this law, his duties are defined.   It is manifest, from an inspection of the different sections, that the legislature supposed it would be more beneficial to the state to let the services of the prisoners, than to supply materials, from the manufacture of which a profit might be made, that would contribute to defray the expenses of the prison.

With a view to insure competition, and to give to every one an opportunity of bidding for the labor, the power to let the services of the convicts is coupled with a requirement that the agent should give notice to the public, in a specified mode, and for a specified time, for sealed proposals.   The object of this is clearly manifest.   It was intended, if possible, to prevent collusion between the agent and contractors, and to secure to the state the highest price that could be obtained for the labor of the convicts.

It was foreseen that it was possible, and even probable, that the agent, in common with many public agents, might from corrupt motives sacrifice the interest of the state to secure to himself or his friend the benefits which it was desirable the state should derive from the services of the convicts.   The legislature, therefore, wisely prescribed the mode in which the agency was to be executed: and if it was not intended this mode should be pursued, why was it prescribed in the law and connected with the acts authorized to be done?   There are no general terms used in the law which denote an intention to clothe the agent with discretionary powers as to the mode of letting contracts.   He is simply authorized to do certain things in a certain way, and all this is set forth in a public law, which all may read and which all are bound to notice, and particularly all who may attempt to execute any power

Agent of State Prison *v.* Lathrop.

under, or derive any benefit from, its provisions. It distinctly points out the extent of the power given, and the mode of its exercise, and says to agent and contractor, this is the way, walk ye in it. I therefore think that that part of the second section which is claimed to be directory, enters into and gives effect to the power itself, and is a limitation upon it, and that any attempt to bind the state without observing all the prescribed proceedings, must be abortive.

This view of the subject would seem to render it unnecessary to examine the authorities cited by the counsel of defendant. But I shall refer to them with a view to show that they cannot apply to this case, even upon the grounds assumed by him.

In the case of The People *v.* Allen, 6 Wendell 486, a court martial was ordered on a day after the time prescribed by the law, fines were imposed, collected and paid over to the sheriff, and an action was brought to recover the money. It was objected, that the court martial was not legally convened. The court, in deciding the case, say, that " when a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be regarded as directory merely, unless the nature of the act to be performed or the language used show that the designation of time was considered as a limitation of the power of the officer;" and the judge proceeds, " there is nothing in the nature of the power given, or in the manner of giving it, that justifies the inference that time was mentioned as a limitation."

In the case of Jackson *v.* Young, 5 Cowen 269, it was held, that the sheriff's omission to file a certificate of sale according to the statute, would not prejudice the purchaser—the act was not a condition precedent, but merely directory.

In the case of Jackson *v.* Bartlett, 8 John. R. 361, it was held, in an action of ejectment against a purchaser of land at a sheriff's sale, that the regularity of the execution could not be questioned. The court say, if an execution is issued after a year and a day, without revival of the judgment by a *scire facias*, it is only voidable at the instance of the party against whom it issued. A purchaser cannot be affected by any matter subsequent to the sale, arising between the parties to a judgment to which he is a stranger.

And in the case of Jackson *v.* Rosevelt, 13 John. R. 97, it was held,

that a sale under execution to a *bona fide* purchaser, could not be defeated for irregularity in the judgment or execution, on the ground that no levy was made, until after the return day.

It will be seen, I think, that these cases can have no application to the case before us. The first two refer to mere questions of time, in which the rights of individuals could not be affected by the observance or non-observance of the directions contained in the law. And the last two cases proceed upon the ground that the *bona fide* purchaser is not supposed to know, and is not required to ascertain, whether proceedings in a court were strictly regular, or whether the officer selling had done his whole duty, if the court had jurisdiction, and the officer had an execution authorizing his making the sale.

There is, however, a class of cases which exhibit the correct application of principles bearing upon this case, and which I will now proceed to notice and state.

In the case of Denning *v.* Smith, 3 John. Ch. R. 332, it appeared that under a law of New York, commissioners in the county of Green were authorized to loan money upon mortgages, and on failure of the mortgagor to pay according to the terms of the mortgage, the mortgaged premises vested in the state, but the commissioners were bound to advertise a sale of the mortgaged premises in three public places, and out of the proceeds of the sale the state was to be paid, and if any balance remained the mortgagor was to have it. In this case the mortgage was not paid, and the commissioners did not comply with the law in advertising. The sale was secret and clandestine. The chancellor, in deciding the case, said: " The act required the notices to be put up in three of the most public places in the county. The object, doubtless, was, to diffuse as widely as possible the knowledge of the sale, and of the cause, and the subject of it. This step was absolutely requisite in order to do justice to the parties concerned in the land, and in the moneys to arise from it." " Sales of real estate by public officers, of one description or another, have become so frequent, and have excited such cupidity, &c., that there is very great danger of injustice, unless we support strictly the checks and guards provided by law against abuse." Apply this reasoning to this case, and it is equally applicable and forcible. The chancellor proceeds, " The commissioners were bound to use diligence and judgment in selecting the public places best

calculated to bring notice of the sale home to the mortgagee, and to all who were most likely to enter into competition for the purchase." The chancellor, referring to a class of cases similar to those cited by the defendant in this case, remarks, " It was not a sale under a judgment or a decree, where the purchaser has the right to presume every thing to have been legally done. Here was a special trust to be executed by the commissioners of loans, for the benefit of the state, and of the party entitled to the surplus, and all their authority to sell was under the statute, prescribing the mode. If the sale by the commissioner would be valid upon a short or defective notice, it would be valid without any notice, and this, surely, cannot be maintained. A special authority must be strictly pursued, and every purchaser is to be presumed to know that special authority in this case, for it is contained in the act, and if he purchases in a case in which that special authority was not pursued, he purchases at his peril." The sale was adjudged void. See Nixon *v.* Hyserott, 5 John. R. 57.

These same principles are sustained in the case of Sandford *v.* Handy, 23 Wendell 260. In this case, Judge Nelson says, in commenting upon the case in 5 Johnson, " There the power was necessarily in writing, and subject to the inspection of the party: this he is presumed to have known, and no good reason exists for binding the principal beyond the scope of it. If the party neglects to call for the power and judge for himself, it is his own fault." On page 268, he remarks: " The whole current of authority shows that unless the manner of doing the particular act is prescribed, even a special agent will be deemed clothed with the necessary and ordinary means of accomplishing it."

Judge Cowen says, in the case of the North River Bank *v.* Aymar, 3 Hill 270, " Whenever the very act of the agent is authorized by the very terms of the power; that is, whenever, by comparing the act done by the agent with the words of the power, the act is itself warranted by the terms used, such act is binding on the constituent as to all persons dealing in good faith with the agent—such persons are not bound to inquire into facts *aliunde.*"

In the case of The Newburgh Turnpike Company *v.* Miller, 5 John. Ch. R. 101, the chancellor, in commenting upon the distinction between words in a law which are imperative, and those which are directory, says, at page 113, " The principle to be deduced from the cases,

is, that whenever the act to be done under a statute is to be done by a public officer, and concerns the public interest, or the rights of third persons, which require the performance of the act, then it becomes the duty of the officer to do it." See, also, the case of Malcom *v.* Rogers, 5 Cowen 193, in which the court recognize the rule laid down by Chancellor Kent in the case last cited. Also, State of Illinois *v.* Delafield, 8 Paige 529, where the Chancellor maintains the rule stated above, that the contractor with an agent appointed by or under a law, must see to it that the agent strictly pursues his powers, and that all are bound to notice the law.

The statute was intended for the benefit of the state as well as those who may contract with it, through the agent; and it must be so construed as to guard the rights of the state equally with those of the contractor. Indeed, it appears to me hardly to admit of interpretation. Its language and the intent are so plain, and the duties of agent and contractor are so obvious, and a compliance with the duties set forth so necessary to carry into effect the object of the law, that I do not feel warranted in citing more cases.

There can be no ground for the presumption insisted upon by the defendant. I regard the plaintiff as the special agent of the state: the statute makes him so for a particular purpose only, and he is limited to the performance of his duty in a particular way. The limitation is known to the person with whom he deals: it is embraced in the law conferring the power, and if the instructions were disregarded, the principal was not bound by his act. It would have been otherwise if the limitation had been private. In that case the agent might have accomplished the object in violation of his instructions.

But there is another objection to the ground taken by the defendant's counsel, which grows out of the duties which were incumbent on him at the time he entered into the contract. He was to be an actor, and was required to perform an act necessary to the validity of his contract. He was bound to hand in to the agent sealed proposals. It is not shown that he did so, and the offer was to prove that he never did submit any sealed proposals to the agent. He cannot ask that the presumption of which he asks the benefit can apply to his own duties.

The action is, in effect, against the state. The agent has not, or is not presumed to have, any personal interest in it, and his acts can only

bind the state if done pursuant to the law. His power only arises from the performance of the acts required to be done. If he has failed in his duty to the state, the plaintiff is not bound.

We have thus far been endeavouring to show that the validity of the contract depended upon a strict compliance on the part of the agent and the contractor with the requirements of the statute; and I have stated my opinion that, to entitle the defendant to recover, he · must show the power of the agent to bind the state, and this must be done by proving his strict performance of his duty. This was incumbent upon him at the trial; and even if he had shown a prima facie case, it was competent to the plaintiff to have shown negatively by proof that the agent and contractor neglected their duty, with a view to meet such prima facie case.

But the question is made, whether this proof was necessary on the part of the plaintiff below, or permissible to the defendant below, under the issue formed. I think it was. The issue is *non est factum*, as in the case in 23 Wendell cited above, under which it may be contested whether the deed is the plaintiff's deed; and that it is not, may be shown by proving a lack of power in the agent thus to bind the state or himself as agent, and thus show it is not the plaintiff's deed.

It is but an act of justice to the judge who tried this cause at circuit to say, that the point upon which this decision is based, was raised after the trial had progressed many days, and after it had become apparent the case would be carried to this court; and therefore the decision made by the judge upon this point was so made with a view to have all the points in the case, which could be raised, decided in this court.

*Judgment reversed.*