## The Mayor & C. C. of Baltimore, *vs.* John Eschbach.

Under the ordinances of the city of Baltimore, the city commissioner can make contracts for *grading* and *paving*, and assess taxes therefor in two classes of cases, viz: 1st, upon application of the proprietors of a *majority* of front feet where the street has been condemned; and 2nd, upon the like application of *all* the proprietors of ground fronting on the street where it has not been formally condemned.

Without such an application he is entirely destitute of the official character and power, in and by which alone he can take any lawful proceeding, or make any valid contract for such work, and the power of the mayor to approve of his determination to grade and pave, and of his contracts for the same, is limited to the same classes of cases, and controlled by the same conditions.

A contract made by the city commissioner for grading and paving, upon the application of the owners of a *majority* of feet fronting on a street *not formally condemned,* is invalid, and not obligatory upon the city, and the contractor can maintain no action against the city on the contract, nor for damages for violating or disregarding its provisions.

Though a private agent, acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule, as to the effect of a like act of a public agent, as the officer of a municipal corporation, is otherwise.

The powers and duties of the city commissioner are specially defined and limited by ordinances having the character and force of public laws, ignorance of which can be presumed in favor of no one dealing with him as to matters thus conditionally within his official discretion.

A municipal corporation cannot be held liable for the unauthorized acts of its agents, though done *officii colore,* without some corporate act of ratification or adoption.

Appeal from the Superior Court of Baltimore City.

Action brought September 5th, 1856, by the appellee against the appellants, to recover damages for default of the defendants in imposing a valid tax for the work done under a contract made by the plaintiff with the city commissioner, for the grading and paving of Hull street. All the material facts of the case are stated in the opinion of the court, and as, by that opinion, the right of the plaintiff to recover is decided against him, it is unnecessary to state the various rulings of

the court below, (LEE, J.,) to which the defendant's excepted. The verdict and judgment were in favor of the plaintiff, and the defendant's appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*G. L. Dulany,* for the appellants.

According to the true construction of the laws and ordinances relating to the paving of streets, and especially of Rev. Ord. of 1850, No. 15, secs. 1 & 36, the signing of the owners of a *majority* of feet fronting on the street to be paved, is sufficient to *vest jurisdiction* over the same in the city commissioner, in *every case* where the title to the bed of the street was, at the of the time of the application, owned by the city authorities, either by a *formal* condemnation, or by *deed* or *dedication.* If this construction is correct, there is an end of this case, for there was sufficient evidence to be left to the jury from which they might find a *dedication* of this street, *Angell on Highways, secs.* 143 to 149. 1 *Md. Rep.,* 525, *West vs. Flannigain.* But if wrong in this respect, still the city is a municipal corporation acting through its agents, and if the agent exceeds his authority, he alone is responsible and the city is exonerated. When the city commissioner, entering into a paving contract, acts within the scope of his authority, the *property holders* are bound; if he transcends his powers, he alone is liable:—in neither event can the city be held responsible. 2 *Md. Rep.,* 70, *Keener vs. Harrod, et al.* The contract between him and the paver, is a contract private in its nature, and being a special agent, the contractor was bound to know the extent of his authority. 9 *Pick.,* 542, *Snow vs. Perry.* Knowledge and extent of an agent's authority, is much more readily presumed in the case of an officer of a *corporation* than of an agent of a private person, because the ordinances or by-laws regulating or creating his duties, are open to the inspection of every one. 17 *Mass.,* 28, *Salem*

*Bank vs. Gloucester Bank.*  If the construction put upon the laws and ordinances by the appellee be the correct one, the city commissioner in determining to pave Hull street, clearly acted beyond the scope of his authority.  The appellee before entering into the contract with the property holders through their agent, was bound to have examined into the powers of that agent.  The law requires him to do so, and this court, in *Henderson's Case,* 8 *Md. Rep.,* 360, have decided, that he acts in such cases at his own peril.  In not doing so, therefore, he was guilty of carelessness and indifference to his own interest, and cannot ask relief from the law.  The ordinance here expressly declares that *in no case, whatever,* shall the city be made responsible for the paving done in compliance with its provisions, and expressly requires a clause to that effect to be inserted in all paving contracts, and such a clause *was inserted* in the contract of the appellee.  There can be no recovery as against the city on this contract.  *Story on Agency, sec.* 321. 3 *Pet.,* 409, *Fowle vs. Alexandria.*  4 *Gill,* 425, *Lefferman's Case.*  5 *Gill,* 244, *Morris' Case.*  All the powers of the commissioner in relation to the paving of streets, are derived from the property holders:—he is their agent, and they on the one side and the contractor on the other, are the real parties to every paving contract.  The consideration moves from them to him, and the city intervenes through its officers merely to guard the public interests—to ensure the performance of the work in which the community at large are interested.

*1. N. Steele* and *Geo. M. Gill* for the appellee.

By the laws of this State the whole subject of grading, paving, opening, closing and condemning streets in the city of Baltimore, are referred to the Mayor and City Council of Baltimore, and, in the exercise of this power, Ordinance No. 15 of Rev. Ord. of 1850 was passed, regulating the *grading and paving* of streets.  This ordinance has reference to two kinds of streets, one, a street legally condemned, the other, a street which has not been legally condemned, and in the former case

the grading and paving may be done upon application of the owners of a *majority* of front feet, but in the latter it cannot be done except upon the application of the owners of *all* the ground fronting and binding on the street. The contract in this case was made in the usual form, and we insist that the city authorities *had the right* to make such a contract; it was within their power, and the fact that they applied their power to a wrong object can make no *difference;* and in support of this position we insist:

1st. That the city commissioner is the agent of the city and not of the property-holders, and in making this contract he acted within the scope of his authority and under express power given him in words by the ordinance. The property-owners are in no sense parties to the contract, which is just as binding on the city as if the city itself had made it. 19 *New York Rep.*, 118, *Brewster vs. City of Syracuse.*

2nd. The contract is to be gathered from the written instrument itself, and the ordinances which form a part of it, and so viewed the contract here is, that the city on its part should levy *a valid tax* for the grading and paving, and that Eschbach should do the work and not look to the city for payment. If the city has granted no tax—no valid tax—he can sue the city for the failure to do so; he could undoubtedly sue for taking it away if it had been given, and so he can for not giving it.

3rd. The city has imposed no tax, the action of the city authorities being, in this respect, a mere nullity, and therefore the plaintiff has a right to sue for this breach of the contract. This street was never *formally condemned*, and there is no sufficient evidence in the case, of cession or *dedication*. 8 *Md. Rep.*, 360, *Henderson's case*. 5 *Md. Rep.*, 323, *Moale's case*.

4th. But departing from the theory of contract which the preceding points assume, the plaintiff has a right to recover in an action on the case for the negligent performance of a duty imposed upon the city. *Story on Agency, secs.* 127, 452. 9 *Md. Rep.*, 178, *Marriott's case*. 19 *Pick.*, 515, *Thayer vs.*

*Boston.* The commissioner is not a judicial officer, and does not act judicially in such a case as this; he is a mere ministerial officer; and it was the duty of the corporation to have the work done in a proper manner, and if this be not done the city is responsible for the failure of its officers. 3 *Comst.*, 464, *White Lead Co. vs. City of Rochester.* 3 *Duer*, 374, *Lacour vs. City of New York.* 1 *Ind.*, 98, *Ross vs. City of Madison.* 9 *Humph.*, 759, *City of Memphis vs. Lasser.*

COCHRAN, J., delivered the opinion of this court.

The Legislature, by the Acts of 1797, chap. 54, 1817, chap. 148, and 1835, chap. 390, conferred upon the Mayor and City Council of Baltimore full power and authority to pass all ordinances necessary to provide for the grading and paving of its streets, and in execution of the power so conferred, they, by Rev. Ord. No. 15 of 1850, imposed upon the city commissioner the duties therein particularly specified and defined, in reference to such grading and paving.

Under this ordinance, the city commissioner, with the approbation of the mayor, determined to grade and pave Hull street, from Fort Avenue to the Port Wardens Line, upon an application made by the owners of a majority of the front feet of ground bounding thereon, and accordingly advertised the work proposed for contract, although that street had never been formally condemned by the Mayor and City Council. Proposals were made for the work by John Eschbach, upon the acceptance of which, he entered into a contract, approved by the mayor, with the city commissioner, acting on behalf of the Mayor and City Council, to complete the work on the terms proposed, in accordance with the provisions of the ordinance. The commissioner then assessed the tax imposed by the ordinance for grading and paving, and delivered his warrants for the collection of the same to the collector. The tax was collected and paid over to Eschbach, with the exception of the sum of $4516, assessed to certain owners of ground, who refused to pay the same, because no application to grade

and pave, sufficient to give the commissioner any authority to act in the premises, had been made by the owners of the ground bounding on the portion of the street to be graded and paved.   Upon these material facts, Eschbach, assuming that the Mayor and City Council were bound by his contract with the city commissioner, to impose and assess for his use, a valid tax for the work done, and that the default, in imposing and assessing such a tax, had caused damage to him, brought suit and obtained the judgment for $4325, upon which this appeal was taken.

The right of the appellee, to an affirmance of this judgment, depends primarily upon the liability or obligation imposed by the contract on the appellants, and as a determination of the character of the contract in that respect will, in our opinion, conclude all questions of right involved, a consideration of other propositions, discussed in the argument of the case, will be unnecessary.   In ascertaining whether the contract charges or imposes any liability or obligation on the appellants, which the appellee is entitled to enforce in this case, the ordinance to which it refers, the circumstances preceding and connected with its execution, and the capacity and power of the parties by whom it was executed, must be considered.

The city commissioner, by the 1st, 34th, 35th and 36th secs. of Rev. Ord., No. 15, of 1850, with the approbation of the mayor, is vested with power and authority to enter into and make contracts for grading and paving, and to assess taxes therefor, in two classes of cases only, 1st, when the proprietors of *a majority* of the feet of ground, binding and fronting on any *condemned street, lane or alley,* make application to him in writing, to have such street, lane or alley, graded and paved; and 2nd, when *all* the proprietors of the ground fronting on a street, lane or alley, *not formally condemned,* make a like application for grading and paving.   One or the other of these applications, as the case may be, must be made, in accordance with the provisions of the ordinance, to initiate his jurisdiction and authority in any case of grading and paving;

36     v.18

without such an application he is entirely destitute of the official character and power, in and by which alone he can take any lawful proceeding, or make any valid contract for such work. The power conferred on the mayor, to approve of his determination to grade and pave, and also of his contracts for grading and paving, is limited to the same classes of cases, and will be controlled by the same conditions and principles. As it is admitted in this case, that Hull street, from Fort Avenue to the Port Wardens line, was never formally condemned, and that the application to have it graded and paved was made by only a part of the proprietors of the ground binding and fronting thereon, it is obvious that the application was not sufficient to bring the case within the jurisdiction conferred by the ordinance on the commissioner, nor to give him any official discretion or authority to take any proceedings, or make any contract respecting it. The fact, that the contract made, related to a subject within the general scope of his powers, does not make it obligatory on the appellants, if there was a want of the specific power to make it. Although a private agent, acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule, as to the effect of the like act of a public agent, is otherwise. The city commissioner, upon whose determination to grade and pave the contract was made, was the public agent of a municipal corporation, clothed with duties and powers, specially defined and limited, by ordinances bearing the character and force of public laws, ignorance of which can be presumed in favor of no one dealing with him on matters thus conditionally within his official discretion. For this reason, the law makes a distinction between the effect of the acts of an officer of a corporation, and those of an agent for a principal in common cases; in the latter the extent of authority is necessarily known only to the principal and the agent, while, in the former, it is a matter of record in the books of the corporation, or of public law. A municipal corporation cannot be held liable for the unauthorised acts of its agents, although done *officii colore,*

without some corporate act of ratification or adoption; and, from considerations of public policy, it seems more reasonable that an individual should occasionally suffer from the mistakes of public agents or officers, than to adopt a rule, which, through improper combinations and collusion, might be turned to the detriment and injury of the public. 17 *Mass.*, 29. 19 *Pick.*, 516. *Lee vs. Munroe, 7 Cranch,* 366. The case of the *Mayor & City Council, vs. Marriott,* 9 *Md. Rep.,* 160, we think establishes no principle inconsistent with those recognized as governing this case, as it turned entirely upon the construction of the Act of 1796, chap. 68, which was held to impose an obligation on the corporation to prevent and remove nuisances, for disregarding which it was made liable.

The appellee, in making the contract in this case, was bound to know the whole extent of the commissioner's power to make the appellants a party to it, and more especially as the ordinance, from which that power was derived, by a particular reference, was made a part of the contract itself. Its execution, in mutual mistake of an important jurisdictional fact, with the stipulation, that the appellants in no case whatever should be responsible for private work done in its performance, inserted in compliance with the provisions of the ordinance, compels the appellee to accept the legal result of the mistake, and the hazards consequent upon the irregularities of the proceedings through which the contract was made. The determination of the commissioner to grade and pave, cannot be held as conclusive of the right to do so, and parties who presume to act upon it, must do so at their peril. 8 *Md. Rep.,* 352.

As the contract of the appellee was entered into by the commissioner on behalf of the appellants, under circumstances which gave him no power or authority to bind them, we think they cannot be held liable in any action on the contract, nor for any claim sounding in damages for violating or disregarding its provisions.

Holding the opinion, that the contract imposed, no liability or obligation upon which an action in any form can be maintained, we must reverse the judgment without a *procedendo*.

*Judgment reversed.*

(Decided April 4th, 1862.)