## Supreme Court—General Term—Fourth Department.

*January*, 1886.

## PEOPLE *ex rel.* BROWN *v.* BOARD OF SUPERVISORS OF THE COUNTY OF ONONDAGA.

COMPENSATION OF COUNSEL ASSIGNED TO DEFEND PRISONER.

Counsel assigned by the court to defend prisoner (*Code Crim Pro.*, § 308) is not entitled to compensation from the county for his services rendered under such assignment.

APPEAL by the relator, Oscar J. Brown, irom an order made at the Special Term of the Supreme Court for Onondaga county, Hon. IRVING G. VANN presiding, of January 4, 1886, sustaining a demurrer to an alternative writ of mandamus sued out by the relator to compel the defendants to audit his claim for services to the county of Onondaga in defending Antonio Rego for murder (*see* 3 *N. Y. Crim. Rep.* 275), under an order of assignment in pursuance of Code of Criminal Procedure, § 308, and dismissing such writ.

On the 3d of February, 1885, Oscar J. Brown, the relator, an attorney and counselor at law, was assigned by the Court of Oyer and Terminer, then sitting in Onondaga county, to defend one Antonio Rego, who had been indicted at the same term for the crime of murder in the first degree. The relator began at once to prepare the case for trial, and devoted substantially twenty days to that work. Peculiar difficulties attended such preparation, as neither the defendant nor many of the witnesses were able to speak or understand the English language. The trial began on February 23, and terminated five days later, in a verdict of murder in the first degree. A motion for a new trial, made before the Oyer and Terminer February 28th, was denied, and the defendant was sentenced to be hanged on the 10th of April. On the 14th of March an appeal was taken to the General Term, and the relator spent from thirty to fifty days in preparing the case and exceptions and his brief for the argu-

ment of the appeal. He was compelled to make several journeys from Syracuse, where he resided, to Utica, where the General Term was in session, in order to argue said appeal. The appellate court reversed the judgment of conviction and ordered a new trial. Twenty-two days were employed by the relator in preparing for the second trial, which lasted eleven days, and resulted, on June 25, 1885, in a verdict of murder in the second degree. Subsequently the relator presented to the board of supervisors a claim amounting to $1,000 for his services in defending said Antonio Rego upon said indictment. The board refused to audit or allow any part of such claim, upon the ground that it had no authority so to do, and, thereupon the relator, upon proof of the foregoing facts, procured an alternative mandamus requiring the supervisors to audit his bill, or show cause to the contrary before this Special Term. To such writ the defendants demurred, upon the ground that facts sufficient to constitute a cause of action was not stated either in the writ or in the affidavit upon which it was granted.

Upon the hearing at Special Term, Mr. Justice VANN sustained the demurrer, writing the opinion given below, and found, as conclusions of law: 1. That the board of supervisors of Onondaga county have no power or authority to audit the claim of the relator, set forth in said writ. 2. That the said claim of the relator is not a legal charge against the county of Onondaga. 3. The alternative writ of mandamus, with the affidavits upon which it is granted, do not state a cause of action.

*Oscar J. Brown*, in person, for relator.

*Hine & Stevens* (*Louis Marshall*, of counsel), for defendants.

VANN, J.—The services rendered by the relator were of much value, not only to the prisoner in whose behalf they were performed, but also to the public generally, who have the same interest in the acquittal of the innocent as in the conviction of the guilty. Services of the same character, however, have been rendered to the poor and unfortunate by nearly every lawyer of experience, as ably and conscientiously, without hope

of pecuniary reward, as though upon the most liberal retainer.
The defense of poor prisoners, upon assignment by the court,
is one of the duties contemplated by the lawyers's oath of office,
which he impliedly assumes in accepting the privilege of prac-
ticing law. 1 *R. S.* 367, 368, 7th ed. Although at an early
day in England, the right of defending by counsel was denied
even to a person on trial for the most serious crime, that harsh
rule was gradually relaxed until the prisoner became entitled
to counsel not only when he was able to employ one, but even
when he was not. While the territory now embraced by the
State of New York was a colony of Great Britain, it was a part
of the common law that counsel should be assigned by the
court for the defense of poor persons charged with crime. 4
*Black. Com.*, 355 ; 1 *Chitty's Crim. Law*, 407, 413. Upon the
organization of our State, the common law, with certain excep-
tions, not material to be now considered, was, by the constitu-
tion then adopted, made a part of the land. *Const. of New
York*, art. 1, § 17. During our entire history, both as a colony
and as a State, it has been the duty of an attorney assigned to
defend a poor prisoner to obey the order of the court. People ex
rel. Saunders *v.* Supervisors of Erie Co., 1 *Sheld.* 517. He is an
officer, not of the State or county, but of the court, subject to
its direction and discipline, and bound by his oath to obey its
orders. He derives his authority to practice from the courts,
and is subject in many ways to their summary jurisdiction, in-
cluding the right of assignment upon criminal trials, and under
certain circumstances even in civil cases also. As early as 1494,
a statute was passed by the English Parliament "in behalf of
the poor persons of this land not able to sue for their remedy
after the course of the common law," and providing "that
such poor persons shall have writs, etc., etc., therefor paying
nothing," and that "the justices shall assign to the same poor
persons counsel learned, by their discretions, which shall give
their counsel, nothing taking for the same." 11 *Hen. VII.*,
chap. 12. Even this early statute only confirmed the common
law. Brunt *v.* Wardle, 3 *Mann. & Granger*, 534. Similar pro-
visions exist in our statutes which enable a person who has a
cause of action against another, but is not worth one hundred

dollars besides the wearing apparel and furniture necessary for himself and family, and the subject of the action, to prosecute as a poor person and to have an attorney and counsel assigned to conduct his suit, "who must act therein without compensation." *Code Civ. Pro.* §§ 458–462; 2 *R. S.* 444.

A defendant in an action involving his right to real or personal property may, under like circumstances, have the same privilege. *Code Civ. Pro.* §§ 463–467. A person so situated may prosecute or defend without paying fees to any officer. *Id.* § 461.

Although for time out of mind it has been the right and duty of courts to assign counsel for the defense of destitute persons under indictment, and likewise the duty of counsel to obey the order of the court, there are but few reported cases on the subject of enforcing payment from the public for services rendered under such circumstances, and no case in this State where the attempt to compel payment was successful. The earliest effort in that direction appearing in our reports was the case of the People *ex rel.* Hadley *v.* Supervisors of Albany County (28 *How.* 22), decided in 1864. The relator in that case was assigned to defend a woman indicted for murder. He asked to be excused, but the court declined to release him. He thereupon engaged in the defense of the accused person, and conducted it through different courts for three years, until she was finally acquitted. The supervisors having rejected his claim for compensation, he applied for a mandamus to compel them to audit. It was held that the claim was not chargeable against the county, because there was no statute directing or authorizing the court to assign counsel to defend prisoners, or providing any compensation or prescribing any mode of payment for such service. This case was expressly approved by the Court of Appeals in People *ex rel.* Ransom *v.* Supervisors of Niagara County (78 *N. Y.* 622), where the relator, who had been assigned to defend a prisoner indicted for murder, sought to compel payment of his claim for services and disbursements, after the Oyer and Terminer had ordered that his compensation should be a charge against the county. The court, all of the judges concurring, adopted the opinion in the

Hadley case, saying that it "contains a sound exposition of the law upon the subject."

The only other case cited from our own reports is People *ex rel.* Saunders *v.* Supervisors of Erie County (1 *Sheldon,* 517), where it was held that such claims for compensation could not be enforced in the absence of express authority from the Legislature.

The rule in other States is not uniform. The following cases hold that attorneys appointed by the court, pursuant to the command of a statute, to defend persons charged with crime and unable to employ counsel are not entitled to compensation: Arkansas County *v.* Freeman, 31 *Ark.* 266 ; Nabb *v.* United States, 1 *Court of Claims*, 173 ; Case *v.* Commissioners of Shawnee County, 4 *Kan.* 511 ; Johnson *v.* Lewis and Clark County, 2 *Montana*, 159 ; Kelley *v.* Andrew County, 43 *Mo.* 338.

The following cases hold the same, the assignment being, so far as appears, in the absence of statutory authority : Rowe *v.* Yuba County, 17 *Cal.* 61 ; Lamont *v.* Solano County, 49 *Id.* 158 ; Elam *v.* Johnson, 48 *Geo.* 348 ; Vise *v.* County of Hamilton, 19 *Ill.* 78 ; Wright *v.* State, 3 *Heiskell, Tenn.* 256 ; Bacon *v.* County of Wayne, 1 *Mich.* 461.

The contrary rule is laid down in Blythe *v.* State, 4 *Ind.* 525 ; Webb *v.* Baird, 6 *Id.* 13 ; Hall *v.* Washington County, 2 *Greene* (Iowa), 473 ; Carpenter *v.* County of Dane, 9 *Wis.* 274 ; County of Dane *v.* Smith, 13 *Id.* 585.

No case bearing upon the question has been cited that arose in this State except the three above mentioned.

It is evident, therefore, that the relator cannot succeed on this demurrer unless, since these cases were decided, the Legislature has by some statute made claims of the kind under consideration chargeable against the county. He insists that section 308 of the Code of Criminal Procedure, which took effect on the 1st day of September, 1881, has this effect. That section provides that "if the defendant appear for arraignment without counsel, he must be asked if he desire the aid of counsel, and if he does, the court must assign counsel." The object of the Code of Criminal Procedure was not to change but to codify the practice already existing. Prior to its passage the

most of its provisions were already a part of the written or unwritten law of the State, but were widely scattered in different statutes and decisions of the courts. The Legislature in enacting this Code did little more than reduce to a compact, convenient and definite form the criminal practice actually existing at the time. In a few instances the practice was simplified, and some doubtful questions were settled, but the main result intended and effected was simply the codification of the law governing criminal procedure. The section quoted does no more than declare the unwritten law in force when the Code was adopted, inherited with the great body of the common law, and confirmed by the uniform practice of all our criminal courts of record, both colonial and State. The duty of the court to assign counsel and of counsel to act upon the assignment, was not more binding after the legislative enactment than it was before. The common law upon the subject was simply written out and enacted in a statute, at least in part; for the section in question only provides for the assignment of counsel if the defendant appears for arraignment without counsel, but is silent as to the duty of the court if he appears for trial without counsel.

If the Legislature had intended that assigned counsel should be paid for their services by the public, it is to be presumed that they would have so provided in definite and certain language. They knew that the highest court had decided that such services were not a county charge, and if they designed to change the law in that respect, would they not have said something upon the subject? Would they have left it wholly to argument or inference? Can it fairly be held that when they were passing an act merely declaratory of the common law relating to criminal practice they intended to make such a change, in the absence of an express provision to that effect? Especially can it be so held when no new duty was imposed upon either court or counsel?

The learned relator insists that as no one should be compelled to render gratuitous service to the public, necessarily the Legislature intended that he and those similarly situated should be paid. But the argument *ex necessitate* is not wholly on one side.

The increase of expenses, the lengthening of trials, and the danger of abuses of various kinds that will occur to every

thoughtful lawyer are subjects worthy of consideration. The valuable privilege that every attorney enjoys of exemption from jury duty is worth more to the legal profession in time and money than liberal compensation for the defense of poor prisoners. The readiness of attorneys to assume the burden of aiding the destitute and friendless, the reluctance of courts to insist that counsel should act when it would be a hardship, the smoothness with which the practice has worked for generations, the absence of any strong or general pressure from the profession for compensation, and the virtual assent of the ablest and noblest men of the bar for so many years to the existing state of affairs, are facts within the knowledge of, and doubtless considered by, the Legislature, and in the light of which the section in question may be construed. *Sedgwick on Stat. and Const. Law*, 190, 231. " The reason of the law, the motive which led to the making of it, and the object in contemplation at the time is the most certain clew to lead us to the discovery of its true meaning." *Vattee's Rules of Interpretation, Liv.* 2, § 270.

My conclusion is that the claim of the relator is not chargeable against the county, and that the supervisors have no power to order it paid. He discharged his duty faithfully, and in so doing served both the prisoner and the public. He is entitled to the thanks of the court and the community, but his claim for compensation, however equitable, cannot, in my judgment, be paid until further action is taken by the Legislature. The demurrer is sustained.

Upon appeal from the order of the Special Term the General Term delivered the following opinion.

PER CURIAM. — Notwithstanding the learned and persuasive argument of the learned relator, the force of the decision of the Court of Appeals in People *ex rel.* Ransom *v.* Board of Supervisors of Niagara County, 78 *N. Y.* 622, and the principles of law, and authorities found in the elaborate and careful opinion of Mr. Justice VANN in this case, lead us to an affirmance of the decision below.

Judgment and order affirmed.

Present, HARDEN, P. J., BOARDMAN and FOLLETT, JJ.