WYKOFF *et al., State Board of Education,* v. W. H. WHEELER & CO.

No. 5294.   Opinion Filed September 22, 1913.

(135 Pac. 399.)

**SCHOOLS AND SCHOOL DISTRICTS—Text-Books — Approval of Bond of Contractor—"If."** Pursuant to the Constitution, article 13, sec. 6, providing that "the Legislature shall provide for a uniform system of text-books for the common schools of the state," Act May 18, 1908, provided for a Text-Book Commission and empowered it to select and adopt a uniform system of text-books, etc., for the use of all the common schools of the state in the manner therein provided. Act March 6, 1911, in effect, superseded said commission and as its legal successor created a State Board of Education, with like power. The act required that the books be furnished under contract and bond by the successful bidder, the bond (Rev. Laws 1910, sec. 7712) "to be approved by the Governor," and (section 7714) "if the bond * * * is presented and duly approved the commission (board) shall approve said contract." Held, that "if" means "when," and makes the action of the Governor in approving the bond a condition precedent to the right of the board to approve the contract, and that the subsequent approval of the contract by the board without the approval of the bond by the Governor is a nullity. Held, further, the approval of the bond by the Governor being essential to the completion of the contract, that the contract without it is no contract, and will not be protected in a court of equity.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*John J. Carney, Judge.*

Action by W. H. Wheeler & Co. against Frank J. Wykoff and others, constituting the State Board of Education.

A temporary restraining order was granted in favor of plaintiff, and defendants bring error. Reversed and remanded, with directions.

*Charles West,* Atty. Gen. (*Chas. L. Moore,* Asst Atty. Gen., of counsel), for plaintiffs in error.

*Ledbetter, Stuart & Bell, Asp, Snyder, Owen & Lybrand, E. G. McAdams,* and *Norman R. Haskell,* for defendant in error.

*Stuart, Cruce & Cruce, amicus curiae.*

TURNER, J. From a judgment of the district court of Oklahoma county rendered and entered on June 21, 1913, at the suit of W. H. Wheeler & Co., a corporation, temporarily enjoining the State Board of Education, composed of Robert H. Wilson, Superintendent of Public Instruction, Frank J. Wykoff, H. C. Potterf, B. H. Hester, F. B. Fite, W. H. Duncan, and A. W. Duff, from acting together, under color of their office as members of the State Board of Education, for the purpose of adopting certain text-books, naming them, and contracting for their supply to the common schools of Oklahoma, to supplant the text-books mentioned in plaintiff's petition, and pursuant to the prayer thereof, all the defendants save Wilson, who is made a defendant in error, bring the case here. The cause was heard upon said petition as an affidavit and other evidence in support thereof, defendants' exception thereto, the separate answer of said Wilson, and other evidence in opposition to the application. From all of which the record discloses:

That pursuant to section 6, art. 13, of the Constitution, providing that "the Legislature shall provide for a uniform system of text-books for the common schools of the state," there was, by an act approved May 18, 1908 (Laws 1907-08, c. 77, art. 8), a Text-Book Commission duly provided for, to consist of the Governor and six others to be appointed by him, and which when appointed were "* * * empowered to select and adopt a uniform system or series of school text-books, registers,

records, maps, charts, globes, and other school apparatus, for use in all the common schools of Oklahoma, and the series so selected shall include all the studies taught in the common schools of the state up to and including the twelfth grade."

Section 3 of the act provided:

"The bids or proposals shall be for furnishing the books, registers, records, and apparatus for a period of five years, commencing August 1, 1908."

That pursuant thereto the then Governor duly appointed said commission, which made and adopted a uniform system of text-books, etc., for five years commencing August 1, 1908. By an act approved March 6, 1911 (Sess. Laws 1911, c. 47), the Legislature passed another act, in effect leaving out the Governor, and establishing a State Board of Education. It read:

"Section 1. The State Board of Education shall consist of seven members including the State Superintendent of Public Instruction, who shall be the president, and six members appointed by the Governor by and with the advice and consent of the Senate, for a period of six years, except as hereinafter provided: The appointive members shall possess the same qualifications and be subject to the same restrictions and limitatoins as are now required of the Text-Book Commission. * * * Upon the passage and approval of this act two members shall be appointed for a term ending June 30, 1913, two members for a term ending June 30, 1915, and two members for a term ending June 30, 1917, subsequent appointments, except to fill vacancies, shall be for the full term of six years.

"The appointive members of said board shall receive as compensation for their services the sum of six dollars ($6.00) per day, * * * while in the performance of their duties, and they shall not be removed during their term of office except for cause."

Section 2 provides:

"The State Board of Education, organized in pursuance of this act, shall be the legal successor of the State Board of Education as it now exists. The State Text-Book Commission (and certain other boards, naming them), * * *

and shall have all the power, rights and privileges heretofore legally exercised by said boards; provided, nothing in this act shall invalidate any contracts entered into by the Text-Book Commission. Said board shall have the following additional powers and duties—" [naming them].

That pursuant thereto the Governor on April 8, 1911, appointed Robert Dunlop, Scott Glenn, O. Frank Hayes, and three others members of said board, the term of the first to expire June 30, 1913, the second to expire June 30, 1915, and the third June 30, 1917, whereupon they, immediately after receiving their commissions, entered upon the discharge of their duties as members of said board, and continued to discharge their duties as such until the adjournment of the second session of the Senate in December, 1912.

The record further discloses that on March 9, 1912, a majority of the board, acting as such, and as successor of the Text-Book Commission, in a regular meeting of the board, by resolution set July 15, 1912, as the date when, and the rooms of the board in Oklahoma City as the place where, it would meet "for the purpose of considering and adopting text-books, as provided for in article 4, chapter 102, Comp. Laws 1909; the contract books adopted at this time to go into effect August 1, 1913, or at the expiration of the present contract." The resolution also provided for notice to all book companies of the action of the board, and provided for reasonable time in which it would hear these companies on the merits of their books, and on May 21, 1912, at another meeting, the secretary of the board was instructed to advertise for bids, as required by law, which he did by a notice dated May 1, 1912, duly published; and that:

"All bids to furnish such text-books, records, and supplies shall be sealed and deposited with R. H. Wilson, Chairman of the State Board of Education, not later than July 15th, at 9 o'clock a. m., A. D., 1912."

That pursuant thereto the board met at that time and place, present, among others, said Wilson, also Dunlop, Hayes, and Glenn, as members thereof, whereupon, and after various

book companies, including plaintiff, had filed with said board copies of their various publications for adoption, as provided in article 4, chapter 102, Comp. Laws 1909, together with their respective bids, which were duly considered on that and other days, pursuant to adjournment, up to July 29, 1912; the board on that day, being sufficiently advised, duly adopted certain books named and offered in the bid of plaintiff and accepted its bid therefor, and awarded it the contract to furnish the same. That on the same day plaintiff executed the contract and, on July 30, 1912, a bond as required by law. That pursuant to the direction of the board, on the same day, the president and secretary, on a form prepared by the Attorney General, duly executed the contract with plaintiff, evidencing the acceptance of the bid and the awarding to it of said contract to furnish said text-books to the common schools of the state for a period of five years, commencing August 1, 1913, and delivered to it a duplicate copy thereof, whereupon plaintiff presented to the Governor said contract with bond attached with the request that he sign the one and approve the other, which he refused to do, whereupon said board, by resolution, on August 2, 1912, approved both contract and bond.

The record further discloses that on June 27, 1912, on which day the board was in session considering the question of adoption, the Governor addressed to said Dunlop, Hayes and Glenn a letter. The material part of it reads:

"Dear Sir: * * * Your resignation is therefore requested immediately and your successor will be appointed. Yours truly, Lee Cruce, Governor."

And, failing so to do, he wrote them again on July 29, 1912, that at 9 o'clock that day he had issued an executive order removing them from membership upon the board. But they, denying the power of the Governor to remove them, continued thereafter to act as members of said board throughout the current year, and until the appointment by the Governor of all the defendants, save Wilson, as their successors

on said board. That said board as then constituted on May 27, 1913, in regular meeting assembled, and with intent to act as the State Board of Education, adopted this resolution:

"Whereas, on the 29th day of July, 1912, this board adopted certain text-books to be used in the schools of this state, and on said day and date contracts were made and entered into, under the direction of any by the authority of this board, with various publishers and book companies to supply books in compliance with said adoption; and whereas, a question has arisen as to the validity of said adoption and the contracts made in pursuance thereto, and the question of the validity of said adoption and said contracts has been submitted by the president of this board to the Attorney General, and he has advised that said adoption and contracts be disregarded by this board, and that the board do proceed to make a new adoption and to make new contracts in the place of and to supplant those adopted on the 29th day of July, 1912: Now, therefore, be it resolved that this board take all the proceedings and do all the things necessary by advertising or otherwise, as required by law, to adopt text-books for the schools of the state in the place of those adopted on July 29, 1912, and to make and enter into contracts with publishers and book companies to supplant the contracts made on said July 29, 1912; and in the place of and as substitute for the books agreed to be supplied by said publishers and said book companies under said contract of July 29, 1912."

And when said board attempted to act pursuant thereto, this suit was brought, and they were restrained from so doing on the theory disclosed in the petition that such action would be void as in excess of the power of the board, and impair the value of plaintiff's said contract upon which it relied.

Whether the plaintiff is entitled to relief turns upon the question of the validity of its contract. Assuming that Dunlop, Glenn, and Hayes were *de jure* officers at the time the same was made, then the same is a contract, and binding if, in the manner of making it, the officers of the state intrusted with its making complied with the law, or, in other words, kept within their grant of statutory power. If they did, plain-

tiff's rights growing out of the contract will be protected, otherwise not.

This was the attitude of the court in *Camp et al. v. McLin, Com'r of Agriculture, et al.*, 44 Fla. 510, 32 South. 927. That was a suit to enjoin McLin, Com'r of Agriculture, and others, based upon an alleged contract for the hire of state convicts pursuant to section 3065, Revised Statutes of the state. The court examined the contract, held the same to be void, and dismissed the bill. And so will we if the contract before us has no binding force. In determining that fact we shall be governed by the general rule laid down in Throop on Public Officers, sec. 556, which reads:

"The general rule has already been incidentally stated, in some of the cases cited in the foregoing section of this chapter. A ministerial officer or board of officers has only such powers as are conferred on him or it by statute, either expressly or by necessary implication; and he or it must comply strictly with the provisions of the statute, regulating the exercise of those powers, otherwise the act or decision will be a nullity."

And by the rule laid down in *People ex rel. National Cigar Company v. Robert Dulaney et al.*, 96 Ill. 503. That was a suit in mandamus by the cigar company against the Commissioner of the Illinois State Penitentiary at Joliet to compel the performance of a contract for the hire of convict labor. Testing the validity of the contract, the court, as disclosed by the syllabus, said:

"A statute defining the duties of public officers is also a limitation upon the powers they may rightfully exercise. Declaratory provisions of a public law, as to the manner of making contracts by officers designated for that purpose, for and on behalf of the state, are a prohibition on them from making such contracts in any other manner or mode, and the inhibited contracts, being without the sanction of law, contain no binding obligation."

Lewis' Sutherland, Statutory Const., vol. 2, sec. 492, also says:

"Where authority is given to do a particular thing, and the mode of doing it is prescribed, it is limited to be done in that mode; all other modes are excluded."

As applying these rules in kindred cases see *Whiteside v. United States*, 93 U. S. 247, 23 L. Ed. 882; *State ex rel. State Publishing Co. v. Smith, Governor, et al.*, 23 Mont. 44, 57 Pac. 449; *State ex rel. Publishing Co. v. Hogan, Secretary of State*, 22 Mont. 384, 56 Pac. 818; *State v. Bank of Missouri*, 45 Mo. 528; *Mayor & C. C. of Baltimore v. John Eschbach*, 18 Md. 276; *Delafield v. State of Illinois*, 26 Wend. (N. Y.) 192; *Hull and Argalls v. County of Marshall et al.*, 12 Iowa, 142; *Brady v. Mayor, etc., of New York*, 20 N. Y. 312; *Agent of State Prison v. Lathrop*, 1 Mich. 438; *Hannan v. Board of Education of the City of Lawton et al.*, 25 Okla. 372, 107 Pac. 646, 30 L. R. A. (N. S.) 214.

*Mayor & C. C. of Baltimore v. Eschbach, supra*, was an action by the appellee against the appellants to recover damages for default of the defendant in imposing a valid tax for the work done under a contract made by plaintiff with the city commissioner for the grading and paving of a street in that city. Applying the rule, *supra*, the court said:

"As the contract of the appellee was entered into by the commissioner on behalf of the appellants, under circumstances which gave him no power or authority to bind them, we think they cannot be held liable in any action on the contract, nor for any claim sounding in damages for violating or disregarding its provisions."

In *Agent of State Prison v. Lathrop, supra*, the agent was a state officer appointed by the Governor, and was especially authorized by law to sue and be sued for all matters pertaining to the prison. The law required sealed proposals to be received, and all contracts to be in writing, etc. Judgments against the agent were to be paid in a manner provided by law. The action was by Lathrop against him in an action of convenant for a breach of articles of agreement, by which the agent of the prison had let to him the services of a number of convicts for a term of years, pursuant to a

certain act of the Legislature. Lathrop recovered. After the execution of the contract had been admitted and the same introduced in evidence by plaintiff and he had closed his testimony, defendant offered to prove by a witness that no notice of the letting of the convicts had been given by the agent of the prison previous to the making of the contract with the plaintiff, and that no sealed proposals were made by him. To the exclusion of the evidence defendant excepted. On appeal the Supreme Court held this to be error, and, applying the rule we have cited, reversed the judgment.

This sends us to the grant of power, and then to the record.

In addition to what we have said of the law, section 7708, Rev. Laws 1910, requires the Governor, while not a member of the board, to call it together for the purpose of making these adoptions. The next section provides that the board shall advertise for a certain length of time for sealed bids or proposals from the publishers of the text-books for the furnishing thereof, the bids to be accompanied by copies of the books offered in the bids, etc. The next section provides for the disposition of the bids; the next section provides as to how the books shall be printed, and prescribes that certain stipulations shall be contained in the contract. Section 7712, *Id.,* provides:

"The bidder to whom any contract may have been awarded shall make and execute a good and sufficient bond payable to the state of Oklahoma in the sum of not less than ten thousand dollars, to be approved by the Governor, such bond to be conditioned that the contractor shall faithfully perform all conditions of the contract. The contract and bond shall be prepared by the Attorney General and shall be made to conform with all the requirements of this article. * * *"

The next section provides for the meeting of the board and the consideration of the proposals; the next section provides the quality of the books, and what points shall be considered by the board in selecting the same, and that:

"The commission shall proceed without delay to adopt, for use in the common schools of this state, text-books in the

schools hereinbefore mentioned, and shall notify publishers to whom contracts are awarded. Each contract shall be duly signed by the publishing house or its authorized officers or agents, and if it is found to be in accordance with the award and all of the provisions of this article, and if the bond herein required is presented and duly approved, the commission shall approve said contract and order it to be signed on behalf of the state by the Governor."

It will thus be seen that the spirit of the act requires the contract to be in writing; both contract and bond to be prepared by the Attorney General; that after the publishers are notified to whom contracts are awarded by the board the contract shall be signed by the publishing house, which shall thereupon execute a bond as required by section 7712, *supra;* that if the contract is found to be in accordance with 'the award and as provided by law, "and if the bond is presented and duly approved" by the Governor, then the commission shall approve the contract and order it to be signed on behalf of the state by the Governor. From all of which it appears that the state intrusted the business of the making of this contract to two of its agents, who were required to work together to that end—the board and the Governor, and prescribed the duties of each; that is, what each should perform going to make up a completed contract. Manifestly it was the intent of the Legislature that one could not enter into a contract binding on the state without the co-operation of the other. The functions each had to perform were intended to be of equal importance and indispensable to the other. In the making of this proposed contract "the hand cannot say of the eye, 'I have no need of thee.'"

In the face of the fact, then, as disclosed by the record, that the Governor refused to approve the bond when presented by the board, we cannot see how we can hold that the board had thereafter, in the face of that refusal, the right to approve the contract, which it did, and thereby make it a binding obligation on the state—that the *ex parte* action of the publisher and the board was all the law required to

make a contract, and that the veto power of the Governor in this instance (if such it was) could be rightfully ignored. Now, when the statute says, as it does, that this bond is "to be approved by the Governor," and "if the bond * * * is duly approved" by him, "the commission shall approve said contract," "if" means "when," and makes the action of the Governor in approving the bond a condition precedent to the right of the board to approve the contract. This was in effect our holding in *State ex rel. Haskell v. Huston, Judge,* 21 Okla. 782, 97 Pac. 982. In that case the Attorney General, as relator, brought suit in the name of the state, as plaintiff, without the request of the Governor, against a certain foreign corporation, in the district court of Logan county. Thereafter the Governor appeared in that court, and set forth the fact, and moved the court to dismiss the cause, which was overruled. Thereafter, at the suit of the Governor in the name of the state, a rule was made absolute in this court, prohibiting the judge of that court from proceeding further with that cause. The pertinent part of Wilson's Rev. & Ann. St. 1903, sec. 6567 (Rev. Laws 1910, sec. 8057), defining the duties of the Attorney General reads:

"* * * He shall appear for the territory and prosecute and defend all actions and proceedings, civil or criminal, in the Supreme Court in which the territory shall be interested as a party, and shall also, when requested by the Governor, * * * appear for the territory, and prosecute or defend in any other court. * * *"

Construing which, we said:

"* * * 'When requested' should be 'if requested,' thereby making the right of the Attorney General to bring a suit in the name of the state in the district court to depend, as a condition precedent, upon executive discretion to be exercised by the Governor. We are clearly of the opinion that the word 'when,' as used in this connection, means no more than 'in case' or 'if,' and this construction is supported by the authorities (citing them)."

It follows, owing to the failure of the Governor to approve the bond, that the right of the board to approve the con-

tract never accrued, and hence the subsequent approval thereof by the board was a nullity. It also follows, being without the necessary approval, that the contract is incomplete and without binding force as a contract.

With the action of the Governor in refusing to approve the bond this court has nothing to do. Whether justifiable or not, we will not undertake to say. It is sufficient to say that such action of the Governor might have been prompted by his opinion that, as the law required that the same shall "be in a sum of not less than $10,000.00," it was within his discretion, as it seems to be, to require a bond in a greater sum. But let that be as it may, his discretion in the premises cannot be controlled by us in any way, and, being indispensable to the validity of the contract, the same is incomplete without it.

*State ex rel. State Publishing Co. v. Hogan, Secretary of State, supra,* was an application for mandamus based on the relation of the State Printing Co. against Thomas S. Hogan, Secretary of State, to deliver to the company copies of the laws, etc., passed by the sixth legislative assembly, to the end that the same might be printed by the company, or that said Hogan show cause. In the affidavit it was stated, in substance, that such was his duty under the law; that on a certain date the State Board of Examiners advertised and invited proposals therefor to be delivered at a certain time, and required that each bid be accompanied by a bond as provided by law; that such was done by the company, which, on the opening of the bids by the Board of Examiners, was declared to be the lowest bidder for doing the work; that said board thereupon awarded the contract to the company, that it was reduced to writing as required by law, whereupon the company entered upon the discharge of its duties under the contract, and from that time up to bringing the suit had in all things complied therewith, and that the contract and bond were valid and complied with the law; that although said Hogan, as Secretary of State, had caused to be prepared copies of all

the laws, etc.," to be printed under said contract, and although the company is the printer entitled to the same, and was ready and willing so to do under the contract, said Hogan refused to deliver the same, after proper demand therefor made, etc. Defendant moved to quash the alternative writ on the ground, among others, that it did not appear that any contract for doing any printing, binding, and distributing the laws and reports, used by any state officer or department, was ever entered into between the State Board of Examiners and plaintiff; that under the Constitution all contracts entered into by the State Board of Examiners for such printing were subject to the approval of the Governor and State Treasurer, and if not approved by them were invalid and in effect not contracts; that it did not appear from said affidavit that the alleged contract was ever approved by the Governor or State Treasurer. After quoting the law applicable to the subject, the court sustained the motion to quash and dismissed the petition, and in passing said:

"The Constitution says that such a contract for printing as relator claims to have shall be given, not only to the lowest responsible bidder below such maximum price and under such regulations as may be prescribed by law, but that it shall be subject to the approval of the Governor and State Treasurer. The approval of these officials completes the contract. * * * The approval of the Governor and Treasurer is by way of a check upon possible extravagances of the Board of Examiners. Call it a power like the veto power of a governor, as the court did in *People v. Croton Aqueduct Board,* 26 Barb. [N. Y.] 240, or one of annihilation, as did the counsel for relator in his argument herein, it nevertheless exists as a portion of the Constitution, in clear and unambiguous language—so plain that but the one construction can possibly obtain. And until relator can show that such approval has been had, it fails to set forth those substantial matters essential to constitute the contract. * * *"

In *State ex rel. State Publishing Company v. Smith, Governor, et al., supra,* the contract referred to in the preceding case was again before the court on an application by

the publishing company for mandamus to compel the Governor and the Treasurer to approve the contract awarded to it by the State Board of Examiners, but which went out on a motion to quash, for the reason, as held by the court, that the duty of such officer to approve the contract let by the board is not ministerial, but involves judicial discretion and cannot be controlled by mandamus.

In *Camp et al. v. McLin, Com'r of Agriculture, et al., supra*, appellants filed a bill in equity alleging that the Board of Commissioners of State Institutions, consisting, among others, of the Governor, offered to lease to the appellants certain convicts for a certain time upon certain terms, which was accepted, whereupon the board prepared a written contract of lease on certain forms prepared according to law; that thereupon McLin, as Commissioner of Agriculture, executed the same, and complainants did likewise, and on the next day the same was delivered to said commissioner and received by him; that at the same session said board drafted a bond in the penal sum of $7,500, conditioned according to law to secure the due performance of said contract, and delivered the same to complainants to be executed with sureties, which was done; that said bond was afterwards delivered to said McLin by the board under contract; that afterwards said commissioner advertised for bids for letting all the state convicts, including the 300 so leased to complainants; that the board had received and entertained bids; that afterwards the commissioner, with the approval of the board, entered into another contract with a certain company, as lessee, by the terms of which the commissioner had bound himself to lease and deliver to the defendant company all the convicts of the state, including the 300 so leased to complainants. After many other allegations, not material to recite, the complainants prayed the court to adjudge and decree their contract to be valid; that complainants were entitled to possession of the prisoners provided for in their contract according to its terms; that McLin, Commissioner, be enjoined from refusing or failing forthwith to prepare and

submit for the approval of the board a plan for an equitable division of the convicts, so that complainants might receive the number due them under their contract, and for general relief. The commissioner answered, reserving as grounds of demurrer that the suit was a suit against the state, and that there was no equity in the bill. The defendant company demurred on those grounds, and also that there was no valid contract between complainants and the defendant McLin, Commissioner, for the reason the bill showed that the contract and bond given to secure the performance thereof had never been approved by the Board of Commissioners of State Institutions as required by law. The cause coming on to be heard upon the demurrers and the application for a temporary injunction, the court held the demurrers good, and ordered them sustained and the suit dismissed. Among other things, the law required that "such contractor or contractors shall give bond with two or more sureties in a sum not exceeding twenty thousand dollars, payable to the state, to be prescribed by the Board of Commissioners of State Institutions and conditioned for the faithful performance of such contract and the duties imposed by this chapter, and such contract and bond shall be approved by the Board of Commissioners of State Institutions before either shall be of any effect, and they shall be filed in the office of the State Treasurer." In affirming the judgment dismissing the bill the court said the essential question involved was whether, upon the allegations of the bill, the appellants had a valid contract as claimed. After quoting the law to be that such a contract and bond shall be approved by the Board of Commissioners of State Institutions before they shall be of any effect, the court said:

"The evident purpose of this provision was to guard against, the possibility of the state being bound by an enforceable contract, without security for its faithful performance by the lessee satisfactory to the board, which is by the law invested with the power of supervision over the convicts, even when such convicts are in possession of the contractor. In

order to secure this very important object, the statute makes the approval of the bond a condition precedent to the validity of the contract. The approval of the bond being made a condition precedent, and in the present case operating also as a limitation upon the power of the officers to contract, the parties must be presumed to have had in mind this condition and limitation in negotiating the contract. Each, it is reasonable to suppose, negotiated with the other upon the assumption that the bond must be given and approved before the state's liability upon the contract would arise; and, even if they did not so negotiate, the state could not be bound, without the giving and approval of the bond, because the statute plainly so declares. * * * The provision of the statute requiring the bond to be approved is mandatory, and such approval is a condition precedent to the effectiveness of the contract. Until and unless the bond is approved, the contract, though formally approved, is a mere offer upon the part of the state, subject to be revoked by the commissioner or rejected by the board at any time or for any cause. * * * The bill alleges and the demurrer admits that the bond tendered by appellants was sufficient, and properly executed. But this does not dispense with the requirement that it be approved by the board as a prerequisite to the effectiveness of the contract. The law placed no limitations upon the power of the board to reject it, and thereby prevent the contract from becoming effective. * * * If the board has arbitrarily exercised its discretion in a matter as to which it owed no legal duty to the appellants, the members must answer to the people who elected them, and not to the courts, for the latter are given no supervisory power over the board in such matter invested in its discretion. The statute nowhere makes it a duty on the part of the board to approve the bond if a valid and legal one is tendered. If there was a duty imposed, to approve the bond, the courts might compel approval in proper cases; but, where no duty is imposed, the courts can neither compel such approval, nor dispense with it, when made a condition precedent to the validity of some act. *State v. Smith,* 23 Mont. 44, 57 Pac. 449."

What though the statute in the case under comment provided that the contract and bond shall be approved by the board of commissioners, and added "before either shall be of any effect?" The addition of these words added nothing to

the mandatory provision that "the contract and bond shall be approved by the board and commissioner,' for, without such approval, they would have been ineffective anyway, as we have shown.

We are therefore of opinion that the alleged contract is no contract, that plaintiff has no rights thereunder to protect, and that the court erred in granting the temporary injunction appealed from. The cause is accordingly reversed and remanded, with directions to dissolve the injunction.

All the Justices concur.