# N. Y. SUPERIOR COURT.

## BENJAMIN DIETZ agt. JOHN T. FARISH.

*Action to compel specific performance — not a proper case — relief always . discretionary.*

A contract or agreement is the union of two or more minds in a thing done or to be done. The assent of the parties must be mutual, reciprocal, concurrent.

There must be some medium of communication by which the union of minds may be ascertained and manifested. This medium is language, symbolical, oral or written. In oral and symbolical communications, when the parties are together, the assent is mutual and the contract completed when the acceptance of one party is announced to the other.

In written communications, and especially in cases where the law requires the assent to be evidenced by a writing, the writing must be delivered by the party to be bound thereby in such a manner as to deprive him of the right to recall it. The intent is the governing and controlling element in the determination of the question whether a contract has or has not been concluded in a given case.

Although the mere consent of the parties is sufficient for the perfection of consensual contracts, nevertheless, if, in agreeing upon a sale or any other bargain, they also agree that there shall be some other formal act, with the intent that the bargain shall not be deemed perfect until such act is performed, the parties, though they may have agreed upon the terms, may recede before the act is complete.

In the case of a contract under seal or a deed, the *locus pœnitentiœ*, the opportunity of withdrawing from it before the parties are finally bound, exists up to the time of its actual delivery as a living obligation.

D. and F. being in treaty for the purchase and sale of a house, met at F.'s office for the purpose of continuing the negotiations. D. brought with him a printed form of contract in duplicate, with a description of the premises filled in. D. signed both of the contracts and handed them to F. for signature, who signed both. At this stage of the business it was decided by F. to proceed no further in it until he had advised with his counsel. At the time it was agreed between the parties to make the delivery of the contract and the payment of the first installment

Dietz agt. Farish.

required by it dependent upon the approval of F.'s counsel. F. took both duplicates into his possession, and both parties proceeded to the office of F.'s counsel. The latter not being in, both duplicates, together with a check for the amount of the first installment, were left by F. for his counsel, with instructions, in case of approval, to deliver one of the duplicates and the check to D. The contract was never approved, nor were any of the papers handed by said counsel, or with his knowledge or consent, to the plaintiff. Before leaving the office of F.'s counsel, D. succeeded in obtaining one of the papers by removing it from a desk where it was lying, and, putting it in his pocket, took it away with him.

*Held*, that there was no valid delivery. The mere fact that the plaintiff, against the express understanding of the parties, managed to get hold of one of the duplicates, is not sufficient to enable him to maintain an action for specific performance. Under the facts as found, the case is not one for a specific performance.

*Held*, also, that although the subscribing witness was subsequently induced by plaintiff to acknowledge, before a commissioner, the execution and delivery of the instrument, it cannot avail the plaintiff where it appears from the evidence that he, at the time of making such acknowledgment, had no knowledge that the contract had not been concluded, or that the duplicates had not been duly exchanged, and was not aware that any controversy touching the matter had arisen, but had every reason to believe that a delivery had taken place.

*Special Term, March*, 1877.

ACTION for specific performance.

The material facts in this case are as follows : The plaintiff and the defendant being in treaty for the purchase and sale of the house in question, met at the defendant's office on the 26th of April, 1875, for the purpose of continuing the negotiations. The plaintiff brought to this place of meeting a printed form of contract, in duplicate, filled in with a description of the premises. There were present at this meeting, besides the parties, Mr. George W. Pell and Mr. Alexander T. Robertson. The blanks were filled. The plaintiff signed both of the contracts, and handed them to the defendant for signature. The defendant then signed both and handed them to Mr. Pell, the friend and adviser of Mr. Farish, the defendant, who was then and now is in infirm health and very deaf. At this stage of

the business it was decided by Mr. Farish, the defendant, to proceed no further in it until he had advised with his counsel. To this the plaintiff assented. Accordingly both the contracts were retained by Mr. Farish, and the parties left the office, Mr. Pell separating from them at the door and going home, while Dietz, Farish and Robertson proceeded to the office of Shipman, Barlow, Larocque & MacFarland, to confer with Mr. Anderson of that firm.

In this immediate connection, Mr. Pell states that on the occasion in question, he went to the office of Mr. Farish, as his friend and adviser (Mr. Farish being very deaf and in ill-health), accompanied by young Mr. Robertson. The interview with Dietz, and the matter in hand, were, on the suggestion of Mr. Pell, intrusted by Mr. Farish entirely to his charge, and he informed Mr. Dietz to that effect. Mr. Pell thereupon offered $58,000 for the house. Dietz finally decided to accept that. Thereupon he produced from his pocket two blank articles of agreement, with the description filled in.

Mr. Pell observed that he knew nothing about the description, and had only learned of the matter that morning. Mr. Pell then filled up the articles of agreement. He gave one to Dietz and kept the other, reading it aloud in order to compare the two. They were then signed by Dietz and by Farish, and handed to Mr. Pell to be witnessed by him. While they were lying upon the table, in his possession, it was proposed that something should be paid upon account; whereupon Mr. Pell suggested $2,000. Mr. Farish, according to the recollection of Mr. Pell, was about to fill up a blank check, when he asked Mr. Dietz if he had the papers. Mr. Dietz replied "no," but that he should have them all that day. Thereupon Mr. Pell suggested that the whole matter should be referred to Mr. Farish's lawyer at once, to be settled with him, to which no objection was made. The papers were all handed by Mr. Pell to Mr. Farish, Mr. Pell saying at the time, "I have nothing more to do with the matter."

The duplicate contracts, signed at Mr. Farish's office, were

afterwards handed to Mr. Collins, at Mr. Anderson's office, by Mr. Farish, to be given to Mr. Anderson, and if he approved of them and thought they were all right, and was satisfied they were all right, Mr. Dietz was to receive $2,000 on Mr. Farish's account. To pay the $2,000, Mr. Farish left a check with Mr. Collins to the order of Shipman, Barlow, Larocque & MacFarland. While in Mr. Anderson's office, at this time, Mr. Dietz asked Mr. Collins for the paper which belonged to him, to which Mr. Collins replied, that he did not know that any paper belonged to him; that he had heard what Mr. Farish had said, that they were to be submitted to Mr. Anderson, and if they were all right, he was to receive $2,000. Before leaving the office, Mr. Dietz succeeded in obtaining the paper without either Mr. Farish's or Collins' consent, and, putting it in his pocket, took it away with him.

The plaintiff never came into possession of this contract through a delivery thereof by Mr. Farish, the defendant, or any one authorized by him to make such delivery.

*Sigismund Kaufmann*, attorney, and *Lewis Sanders*, of counsel for plaintiff.

*Shipman, Barlow, Larocque & MacFarland*, attorneys.

*W. W. MacFarland*, of counsel for defendant.

FREEDMAN, *J.* — This is an action to compel the specific performance of a contract for the sale and purchase of real estate.

The defense is two-fold: First, that the contract was never concluded so as to be binding upon the parties; and, secondly, if it was, that a defect existed in plaintiff's title.

Upon these issues evidence was introduced by both sides, and upon such evidence several interesting questions of fact and of law arise.

As to the facts, I shall only say that upon a proper application of the rules which govern in the consideration of testimony, the evidence preponderates so largely in favor of the

defendant that he is entitled to have his version concerning the transactions constituting, as plaintiff claims, an execution and delivery of the contract, adopted as the true one.    So far as necessary the facts thus established will be referred to hereafter.

As to the law, the learned counsel for the plaintiff strenuously insisted that in every aspect which may be taken of the case there was, in law, a perfect execution and delivery of it, and that such execution and delivery could not be varied by proof of annexation of conditions.

This claim, in view of the facts as actually determined, is a bold and startling one, and in consequence thereof I felt induced to make, and did make, before coming to a conclusion thereon, a careful examination of the principles of law which govern in the matter of the execution and delivery of contracts.    The conclusions at which I arrived, after such examination, may be stated to be as follows:

A contract or agreement is the union of two or more minds in a thing done or to be done.    In the language of some of the old writers, it is called "a coupling or knitting together of minds."    The assent of the parties must be mutual, reciprocal, concurrent.

There must necessarily be some medium of communication by which the union of minds may be ascertained and manifested.    Among men this medium is language, symbolical, oral or written.

In oral and symbolical communications, when the parties are together, the assent is mutual and the contract completed when the acceptance of one party is announced to the other.

In written communications, and especially in cases where the law requires the assent to be evidenced by a writing, the writing must be delivered by the party to be bound thereby in such a manner as to deprive him of the right to recall it.

The delivery may be by words without acts; as if a deed be lying upon a table, and the grantor says to the grantee, "take that as my deed," it will be a sufficient delivery; or it

may be by acts without words, and therefore a dumb man may deliver a deed.

The intent is the governing and controlling element in the determination of the question whether a contract has or has not been concluded in a given case. Established forms and ceremonies furnish useful indications of intention; but in themselves, and in the absence of mutual and concurring intention, meeting in the same sense, to the same point, and embracing the same subject-matter, they are inoperative. This is a rule of universal jurisprudence, and applies to all classes of contracts.

Thus, although the mere consent of the parties is sufficient for the perfection of consensual contracts, nevertheless, if, in agreeing upon a sale or any other bargain, they *also agree* that there shall be a formal act passed before a notary, with the intent that the bargain shall not be deemed perfect until the notarial act is so likewise, the parties, though they may have agreed upon the terms, may recede before the act is complete (*Pothier on Obligations, art.* 1, *Ev., p.* 110).

Referring to the same principle, under another title, Mr. Bell, in his very learned commentaries on Law of Scotland (7*th ed.* [*McLaren*], *bk.* 3, *pt.* 1, *p.* 345), says :

The plea of *locus pœnitentiæ* is grounded not merely on the want of evidence of a bargain, but on the want of that perfect and full consent which stands contradistinguished from imperfect resolution or intention. The want of evidence may be supplied by a reference to oath; the want of the badge of full and perfect consent never can be so supplied. Such evidence may supply the loss of the document after it has been *completed* as an irrevocable engagement; but it will not destroy the privilege of receding, where the irrevocable obligation has not been legally declared.

In the case of a contract under seal or a deed therefor, the *locus pœnitentiæ,* the opportunity of withdrawing from it before the parties are finally bound, exists up to the time of its actual delivery as a living obligation.

If the grantor do not intend that his deed shall take effect until some condition is performed, or the happening of some future event, he should either keep it himself, or leave it with some third person as an escrow, to be delivered at the proper time.

If he deliver it as his deed to the *grantee*, it will operate immediately, and without any reference to the performance of the condition, although such a result may be contrary to the express stipulation of the parties at the time of the delivery. This is one of the cases in which the law fails to give effect to the honest intention of the parties, for the reason that they have not adopted the proper legal means of accomplishing their object.

But it is only in cases falling strictly within the exception stated, that is to say, in cases of delivery of the deed with intent to part with it as a deed, and for the benefit of the grantee, that the law, for reasons of public policy, fails to carry out the intention of the parties as expressed in the condition annexed to the delivery, and rejects parol evidence as to such condition ( *Worrall* agt. *Munn*, 5 *N. Y.*, 229 ; *Braman* agt. *Bingham*, 26 *id.*, 483 ; *Cocks* agt. *Barker*, 49 *id.*, 107).

If, though there be a delivery to the grantee, the deed is delivered with the intent that the grantee shall not take it as the deed of the grantor, nor receive it as grantee, but as the agent of the grantor for a special purpose, as, for instance, for the purpose of transmitting it to a third person to be held by the latter in escrow, the case does not come within the exception ( *Gilbert* agt. *The North Am. Fire Ins. Co.*, 23 *Wend.*, 43).

A deed may be deposited with the grantee, or handed to him, for any purpose other than as the deed of the grantor or as an effective instrument between the parties, without becoming at all operative as a deed (*Ford* agt. *James*, 2 *Abb. Ct. of App.*, 159 ; *per* GROVER, *J.*, 163).

Formerly the law was that delivery in escrow must be to a stranger, and that if made to the grantee's authorized agent the delivery has the same effect as if made to the grantee

Dietz agt. Farish.

personally. But this rule has since been invaded by numerous acknowledged exceptions.

Thus, in *Watkins* agt. *Nash* (*L. R.*, 20 *Eq. Cas.*, 262; *S. C.*, 13 *Moak's Eng. R.*, 781), vice-chancellor HALL had occasion to pass on the question of delivery in escrow to the solicitor of a party to the deed, and sustained the apparent intent of the parties against a strict construction of the technical rule, that delivery to the agent of the grantee cannot be in escrow. It appeared that defendant's solicitor, Skyrme, represented to plaintiffs that his client wished to pay off a mortgage which the plaintiffs, as trustees, held on Nash's estate; and at Skyrme's request, to facilitate the transaction, as he said, they executed a reconveyance and delivered it to him expressly as an escrow, and took a writing declaring it to be such. Skyrme used the reconveyance to get the money from his client, which he appropriated, and then returned the reconveyance, pretending that the payment was not made.

The vice-chancellor laid down the broad explanation of the old rule, that when a stranger was spoken of, " what is meant, is a delivery of a character negativing its being a delivery to the grantee or to the party who is to have the benefit of the instrument. Moreover, the delivery to the solicitor of the grantee might be deemed a delivery to a third person for the benefit of all parties."

On the other hand, if the usual formalities of execution take place, and the contract under seal is, to all appearances, consummated without any conditions or qualifications annexed, and the acts of the parties clearly evince their intention to be bound without a formal delivery, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor (*Scrugham* agt. *Wood*, 15 *Wend.*, 545, *and cases there cited*). Here, again, the law regards the duly authenticated intention of the parties rather than mere ceremonial formalities. It even regards the mere possession of the document as a non-essential, but the decisive and conclusive evidence of the intention of the parties as the operative and controlling feature.

Dietz agt. Farish.

I think I have now sufficiently demonstrated, for the purposes of the case before me, that, except where reasons of public policy intervene, it is the invariable policy of the law, in determining the question of the execution and delivery of a contract, to give full effect to the true intent and meaning of the parties, so far as the same can be ascertained from the surrounding circumstances, and that in this respect the law is in full accord with right, reason and substantial justice.

· The claim advanced by the learned counsel for the plaintiff that, notwithstanding the agreement of the parties that delivery should take place upon the approval of the contract by counsel, the bare execution of it under seal, so far as it was executed, imparted binding force to it, and is not only sufficient, but conclusive evidence of the existence of a valid contract, involves, therefore, a misconception of the true relations of legal principles.

At the time it was agreed between the parties to make the delivery of the contract and the payment of the first installment required by it dependent upon the approval of defendant's counsel, it had not yet been delivered either by words without acts, or by acts without words. It was still under the control of the defendant, and his opportunity for withdrawing had not yet expired. Not even a qualified or conditional delivery had been made to the plaintiff. The defendant thereupon took both duplicates into his possession, and both parties proceeded to the office of defendant's counsel. The latter not being in, both duplicates, together with a check for the amount of the first installment required to be made by the contract, were left by defendant for his counsel with instructions, in case of approval, to deliver one of the duplicates and the check to the plaintiff. The contract was never approved, nor were any of the papers handed by said counsel, or with his knowledge or consent, to the plaintiff. Hence there was no valid delivery. The mere fact that plaintiff, against the express understanding of the parties, managed to get hold of one of the duplicates, is not sufficient to enable him to maintain the action.

Nor can it avail the plaintiff that he succeeded in subsequently inducing Mr. Pell, the subscribing witness, to acknowledge, before a commissioner, the execution and delivery of the instrument, when, as appears from the evidence, the said witness, at the time of making such acknowledgment, had no knowledge that the contract had not been concluded, or that the duplicates had not been duly exchanged, and was not aware that any controversy touching the matter had arisen, but had every reason to believe that a delivery had taken place. True, he should not have made the acknowledgment, unless he knew the fact to be as he stated, and his course, in that respect, is highly reprehensible. But I do not see why the consequences of his unauthorized act should be visited upon the defendant. Even the record of a deed, after acknowledgment, is only *prima facie* evidence of a delivery, and as such it may be rebutted (*Jackson* agt. *Perkins*, 2 *Wend.*, 308; *Gilbert* agt. *North Am. Fire Ins. Co.*, 23 *id.*, 43).

In my findings I have set forth with great particularity all the circumstances touching the execution of the contract, its deposit in the office of defendant's counsel, and the manner in which plaintiff got possession of the duplicate upon which he brought this action. It is, therefore, not necessary to enlarge upon them here. Suffice it to say that upon the facts as thus established, plaintiff has failed to show that the said contract for the purchase and sale of the premises in question, was ever concluded so as to have any binding force whatever.

In regard to the alleged defect in plaintiff's title, I have come to the conclusion that upon the evidence as it stands, the plaintiff did not have a marketable title to the premises described in the complaint.

The facts being as found, the case is not one for a specific performance. This relief is always discretionary and will never be granted except it be strictly equitable under all the circumstances that it should be granted.

The defendant is entitled to judgment, dismissing the complaint upon the merits, with costs.