STATE EX REL. STATE PUBLISHING CO. *v.* HOGAN,
SECRETARY OF STATE, DEFENDANT.

[No. 1,376.]

[Submitted March 27, 1899. Decided March 31, 1899.]

*Mandamus — Affidavit — Sufficiency — How Tested — Public Printing— Contract with State—Essentials to Validity.*

1. The sufficiency of the affidavit on which an alternative writ of mandate is based may be tested by a motion to quash the writ.
2. Under the practice in Montana, a motion to quash performs the same office as a general demurrer does in some states to the more formal writ and brings the law of the case before the court.
3. A compliance with the Constitution, Art. V, Sec. 30, and Political Code, Sec. 710, providing for the approval by the governor and state treasurer of a contract with the state for public printing, is indispensable to its validity.

APPLICATION for *mandamus* by the State, on the relation of the State Publishing Company, against Thomas S. Hogan, Secretary of State. Motion to quash the writ sustained, and petition dismissed.

Statement of the case by the Court.

W. J. MacHaffie, as Secretary and General Manager of the State Publishing Company, applied to this Court for a writ of mandate requiring Thomas S. Hogan, Secretary of State of the State of Montana, to deliver to the State Publishing Company copies of the laws and resolutions, with marginal notes, of the Sixth Legislative Assembly, to the end that the same might be printed by the said company, or that the said Hogan, secretary aforesaid, appear and show cause why he has not delivered the said papers to the State Publishing Company.

In the affidavit it is stated that the duty devolves upon the Secretary of State to deliver to the printer entitled to the same, at the earliest day practicable after the final adjournment of each session of the Legislative Assembly, copies of all laws and resolutions, with marginal notes, and journals kept, passed or adopted at such session, with the proper indexes to the same;

that on November 28, 1898, the State Board of Examiners advertised for more than twenty days, in two daily papers published at the seat of government, for the furnishing and doing all the printing, binding and distributing of the laws, journals, reports, and other printing and binding of any books used by any state officer or department, and did invite proposals therefor to be delivered by 12 o'clock noon of December 20, 1898, and required each bid to be accompanied by a bond as provided by law; that among other bids for the printing, binding and distributing of the laws, journals, department reports, and other printing and binding, the State Publishing Company made a bid therefor, accompanied by a bond as required by law; that upon December 20, 1898, upon the opening of said bids by the said Board of Examiners, it was declared and decided by the said board that the bid (for printing the things aforesaid) of the State Publishing Company was the lowest and best, and that the said company was the lowest and best bidder for doing said work; that the State Board of Examiners did award the contract for doing said work, and furnishing said printing of the laws and journals in book form, to the State Publishing Company, by means whereof there then and there did become a contract between the State of Montana and the State Publishing Company for doing said work upon the terms and conditions in said advertisement and bid set forth and declared; that thereafter the said contract was further put in writing in due form of law, and the bond theretofore filed by the State Publishing Company was in fact, and was deemed taken and held to be, sufficient in form and amount to be given by the State Publishing Company as a compliance with Section 708 of the Political Code; and that thereupon the said State Publishing Company entered upon the discharge of its duties under said contract, and from December 20, 1898, until the day of filing this affidavit it has done and performed divers and sundry of the duties devolved upon it by virtue of said contract, and has in all things complied therewith. Affiant further says that the said contract and the bond filed were in fact, and in the judgment of the board, valid and correct in

substance and in form, and were in compliance with the requirements of Section 708 of the Political Code; that Thomas S. Hogan, as secretary aforesaid, has caused to be prepared copies of all the laws and resolutions, with marginal notes, passed by the Sixth Legislative Assembly, and also copies of the journals kept, passed and adopted at such session, with proper indexes of the same, as kept for the public printer of said state; but although the said State Publishing Company is the printer entitled to the same, and is, and has been for some time past, ready and willing to discharge its duty, the said secretary does not and will not deliver to it or its agents the copies of said laws and resolutions, with marginal notes, and with proper indexes to the same. Affiant then says that he has made demand for said papers, to the end that they might be printed under the contract, but that the Secretary of State would not deliver the same. Wherefore affiant says that the State Publishing Company is entitled to have the said copies delivered, and that the delivery of the same is especially enjoined upon the said Hogan, as secretary, and that for a redress of the said wrong the State Publishing Company has not a plain, speedy and adequate remedy in the ordinary course of law.

An alternative writ was issued, to the effect that whereas, it appearing by the affidavit of the relator, in behalf of the State Publishing Company, that the said Hogan will not deliver to the said company or its agent the copies of the laws and resolutions, with marginal notes and indexes to the same, which have been prepared by him for the public printer, as ' it is in said affidavit said to be his duty to do,'' therefore he was commanded to forthwith deliver to the State Publishing Company the said copies, or appear before the Supreme Court on March 27, 1899, then and there to show cause why he has not so done.

The defendant moved to quash the alternative writ upon several grounds, among which were these: That it does not appear from the affidavit upon which the alternative writ was issued that the plaintiff is entitled to any relief by writ of

mandate; that the facts set forth are not sufficient to authorize the issuance of the writ; that it does not appear that any contract for doing any printing, binding and distributing the laws and reports used by any state officer or department was ever entered into between the State Board of Examiners and the plaintiff; that under the constitution all contracts entered into by the State Board of Examiners for the printing, binding, or distributing, of the kind referred to in the affidavit, are subject to the approval of the Governor and State Treasurer, and, if not approved by them, are invalid, and in effect no contracts; that it does not appear from said affidavit that the alleged contract therein referred to was ever approved by the Governor or State Treasurer; and that the allegation in the affidavit that, by means of the making of the award as therein stated, ''there then and there did become a contract between the said State of Montana and the said State Publishing Company for doing said work,'' is merely the statement of a legal conclusion.

*Sanders & Sanders*, for Relator.

*C. B. Nolan*, *Attorney General*, and *Carpenter & Carpenter*, for defendant.

PER CURIAM.—1. Relator's counsel argues that the motion to quash the alternative writ is not a proper way to test the sufficiency of the affidavit. We hold otherwise. If the affidavit fails to state the facts necessary to justify the issuance of an alternative writ of mandate, of course it ought not to be issued at all. But applications are usually *ex parte*, and in the limited time generally taken by a court to examine into the question of the sufficiency or insufficiency of the affidavit when application is made, and with no pleading or argument before it testing the sufficiency of the allegations, if a *prima facie* showing seems to be clearly made the court usually issues the alternative writ; and fatal defects, if any there be, are not made apparent until the return day, when the defendant enters his appearance. Upon the return day, respondent (or defend-

ant) may attack the affidavit by motion to quash the writ. This practice by motion was laid down in *Territory ex rel. Tanner* v. *Potts,* 3 Mont. 364, and is supported by other authorities. (*State ex rel. Cothren* v. *Lean,* 9 Wis. 279.) A motion to quash challenges both the sufficiency of the writ, and also the sufficiency of the affidavit upon which the writ is based. (High, Extr. Leg. Rem. Sec. 522.) Motion to quash is occasionally regarded as going further than a demurrer, which is sometimes held to test those defects only which appear in the alternative writ itself, while motion to quash reaches back to the petition upon which the writ was issued. This distinction was noted in *State* v. *County Court,* 33 W. Va. 589, 11 S. E. 72, and in *Fisher* v. *City of Charleston,* 17 W. Va. 595, where it was held that, if the petition does not state the necessary facts to justify the issuing of an alternative writ, it ought not to be issued, and, if issued, on the return day this fatal defect should be taken advantage of, not by demurrer, but by a motion to quash the alternative writ, or discharge the rule, as improvidently awarded. "The petition and affidavit," said the court, "bear to the *mandamus nisi* a relation similar to that which an affidavit bears to an attachment." Merrill (Mandamus, Sec. 269) looks upon a motion to quash the alternative writ as equivalent to a demurrer; adding that it is "a matter of little moment whether the objections to the writ be urged by demurrer, or by a motion to quash."

In the practice of this state it has been usual, where an alternative writ is issued, to regard the affidavit as part of the alternative writ, when it is referred to in the writ, and when a copy of such affidavit is served with it. Such an alternative writ, it would seem, "states generally the allegation against the party to whom it is directed." (Code of Civil Procedure, Sec. 1963.) The two papers are looked upon as interdependent, and a writ with such reference to the affidavit has been assumed to be sufficient. Under this practice, adopted for convenience, a motion to quash performs the same office as a general demurrer does in some states to the more formal writ;

and brings the law of the case before the court.  (High, Extr. Leg. Rem. 455; Code of Civil Procedure, Sec. 1970; *Gill* v. *State*, 72 Ind. 266.)  But, whatever the exact office of the demurrer to an alternative writ may be, we have no doubt that the scope of the motion to quash enables us to pass upon the sufficiency of the affidavit, under our codes.  (Code of Civil Procedure, Sec. 1970.)

2.   Upon the affidavit, relator must be denied relief.   Section 30, Art V, of the Constitution, provides as follows: ''All stationery, printing, paper, fuel and lights used in the legislative and other departments of government, shall be furnished, and the printing and binding and distribution of the laws, journals and department reports and other printing and binding, and the repairing and furnishing the halls and rooms used for the meeting of the Legislative Assembly, and its committees, shall be performed under contract, to be given to the lowest responsible · bidder below such maximum price and under such regulations as may be prescribed by law.   No member or officer of any department of the government shall be in any way interested in any such contract; and all such contracts shall be subject to the approval of the Governor and State Treasurer.''

Construction of the Constitution demands that every word shall be rendered operative, if it be practicable to make it so. This rule obviously finds its reason in the presumption that in their Constitution the people have expressed themselves with care, and in words that have been weighed.   ''Every word employed in the Constitution is to be expounded in its plain, obvious and common sense, unless the context furnishes some ground to control, qualify or enlarge it.''   (Story on Constitutions, Sec. 451.)

Relator has failed to show a clear legal right to have the Secretary compelled to deliver to it the papers it alleges it is ready and willing to print.   The Constitution says that such a contract for printing as relator claims to have shall be given, not only to the lowest responsible bidder, below such maximum price and under such regulations as may be prescribed

by law, but that it shall be subject to the approval of the Governor and State Treasurer.    The approval of these officials completes the contract.    With such approval, the agreement between the printer and the State becomes one whereby the printer acquires a right in relation to the printing; but without it he has no right whatever to demand the papers to print, or to compel their delivery to him.    And to the same effect is Section 710 of the Political Code, which provides that all contracts made by the Board of Examiners ''must be approved by the Governor and the State Treasurer.''    If relator has done work for the State under any agreement made with the Board of Examiners, purporting to be a valid contract, that fact cannot help it in this proceeding, or make a contract where none exists.

It being indispensable that the agreement of the Board shall be approved by the Governor and Treasurer, before there can be a valid contract, mere allegations that the Board of Examiners received bids, and made a contract with relator, whose bid was the lowest, are wholly insufficient; for the conclusion therefrom that a contract exists is unsupported by such facts, independent of certain other facts, which, as said, must exist, to make a contract.    The approval of the Governor and Treasurer is by way of a check upon possible extravagances of the Board of Examiners.    Call it a power like the veto power of a governor, as the court did in *People* v. *Croton Aqueduct Board*, 26 Barb. 240, or one of annihilation, as did the counsel for relator in his argument herein; it nevertheless exists as a portion of the Constitution, in clear and unambiguous language,—so plain that but the one construction can possibly obtain.    And, until relator can show that such approval has been had, it fails to set forth those substantial matters essential to constitute the contract which it would have the Secretary of State ordered to comply with.

Motion to quash sustained, and petition dismissed.

*Dismissed.*